STATE ex LITTERST, Plaintiffs-Appellants, v. SMITH, Commr. et, Defendants-Appellees.

Ohio Appeals, Fourth District, Pike County.

No. 160. Decided May 12, 1950.

W. T. Reed, Waverly, for plaintiffs-appellants.
Wray Bevens, Pros. Atty., George D. Nye, Waverly, Wm. E. Knepper, Columbus, for defendants-appellees.

(ROSS, PJ, HILDEBRANDT & MATTHEWS, JJ, of the First Appellate District, in the Fourth District by designation.)

## OPINION

By THE COURT:
This is an appeal on law and fact from a judgment in an action by relators as taxpayers to enjoin the county commissioners, the county auditor, and the county engineer from participating in the expenditure of any funds of Pike County for the maintenance, repair, or upkeep of two roads identified by name as "Stone Quarry" and the "Lazar and Bricker" Roads.

The defendants in the beginning contested the right of the plaintiffs as taxpayers to maintain this action on the ground that the Prosecuting Attorney had not refused to institute the action, but later the defendants withdrew the objection and waived any defense they might otherwise have because of any defect in the request to the Prosecuting Attorney or of lack of proof of failure on his part to proceed. Later still, the defendants by cross-petition prayed the Court for a judgment declaring that said roads were duly dedicated and established public roads upon which public funds could be expended for their maintenance and for other relief. In view of this cross-petition and the waiver there is no longer any issue in this case as to the capacity of the relators to maintain this action.

The case is submitted to this Court upon the pleadings, the exhibits, and a transcript of the evidence introduced or offered in the trial court, supplemented by the testimony of one of the trustees of Pee Pee Township that the trustees had done nothing and did not contemplate doing anything in the nature of exercising jurisdiction over either of those roads.

(1) A review of this record convinces us beyond doubt that Pike County has title to an easement for highway purposes on and over a strip of land 40 feet wide and that the roads that have been marked out and established are within the limits of that 40 foot strip.

Long before Pike County had acquired any easement or any right in the public had arisen, the public, by sufferance of the private owner of the land, had when occasion arose, used a path or trail following in a general way the same course as these 40 feet strips. The right of the public did not accrue, however, until the month of June, 1941, as to the Stone Quarry Road, and June, 1945, as to the Lazar-Bricker Road. At those times, the owners of the fee simple title to the land executed and delivered general warranty deeds to the County of Pike, conveying to it perpetual easements and right of way for public highway and road purposes on and over these strips forty feet wide. The County Commissioners accepted Stone Quarry Road deed and it was duly recorded in the deed records of the County. The Lazar-Bricker Road deed was manifestly used in preparing the minutes of the County Commissioners, but was not recorded in the Recorder's Office. It was apparently lost, and, because of that, another deed was executed and delivered at a later date.

Shortly prior to those dates, the County Commissioners had, by resolutions duly passed, found that it was for the public convenience and benefit to take over, construct and

improve certain roads identified by description corresponding to that contained in the aforesaid deed and appropriated money for that purpose. These roads were opened for public travel and money has been expended by the County Commissioners in their construction and maintenance. These roads have been and are being used by the public, though not extensively, for pleasure, including a view of the panorama of Lake White and surrounding territory spread out at a lower level.

The defendant commissioners did not invoke the provisions of §6860 GC, et seq., relating to the location, establishment, or alteration of a public road, and that is the chief objection raised by the relators to the expenditure of public money in the maintenance of these roads. Nor have the Commissioners complied with certain statutory provisions required for integrating these roads into either the state highway or the county system; nor have the township trustees assumed any jurisdiction over them. It is argued from this premise that they cannot be public roads, and that being true, public funds cannot be used in their maintenance.

On the other hand the defendants contend that regardless of compliance with statutory requirements the facts and circumstances show that these strips were dedicated to the County for highway purposes, and that the Commissioners and the public have accepted that dedication and thereby these roads became established as public roads.

Many collateral issues have arisen in this litigation, most of which were, in our judgment, entirely irrelevant. The end of the trial finds but one substantial issue dividing the parties, and that is whether these roads have become public roads as a result of the grants of the easements by the property owners, the acceptance by the County Commissioners and their opening of them for public travel, and their use by the public.

The relators in the first place make the broad assertion that since the enactment of the so-called "Green Highway Act" there can be no such thing as the creation of a public highway in any way other than that prescribed by that Act. They also contend that in view of those statutes the cases on the subject of common law dedication decided prior to their enactment are no longer controlling. The substance of those prior decisions is epitomized in **13 O. Jur., 738** and **739** as follows:

"In order to constitute or effect a dedication of property to a public use at common law, except in those cases where

the dedication is based upon a technical estoppel, three things are necessary, namely: The existence of an intention on the part of the owner to make such dedication; an actual offer on the part of the owner, evidenced by some unequivocal act, to make such dedication; and the acceptance of such offer by or on behalf of the public.

"A dedication, at common law, may be either express or implied. It is express when the animus dedicandi is expressly declared; it is implied when it arises by operation of law from the acts of the owner. No particular words or ceremonies, or form of conveyances, are necessary. Anything which fully demonstrates the intention of the donor, or the acceptance by the public, is effectual."

That the authority of these cases has not been weakened by any legislative enactment is manifest from the Supreme Court's recourse to them in the recent case of **Village of Hicksville v. Lantz, 153 Oh St, 421** (Ohio Bar of May 1st, 1950), in determining whether a public highway had been created in the absence of a statutory dedication. The court took occasion to set forth in its syllabus the requirements of a common-law dedication, saying:

"One of the essential elements of a common-law dedication of property to a public use is the intention of the owner of the property to so dedicate it.

"That intention may be expressed or implied from circumstances.

"A common-law dedication of an owner's property to a public use has the same effect as an express grant of such property to such a use; and the law requires that there be clear evidence of the owner's intention to dedicate such property to such a use."

So we conclude that the existence of the title to this land in the county for public highway purposes is sustainable even in the absence of formal deeds of dedication. But in this case the evidence shows that there were formal deeds of dedication delivered to and accepted by the County Commissioners.

In **Carder v. Commissioners of Fayette County, 16 Oh St, 354,** it was held that a county could take title to property by devise, and at page 369, the Court said:

"The county commissioners are, by various statutes, authorized to 'purchase' real estate for the use of the county.

S. & C. 1229, sec. 2, 249; sec. 1. Every lawyer knows, that title by purchase is title by any means except descent, and, of course, includes title by devise. That the word purchase will have this original and technical meaning, when used in a statute, and not controlled by other statutes, or the general policy of the law, was expressly decided by this court in **American Bible Society v. Marshal et al., 15 Oh St 538.** There is the total absence of any such policy, or counter legislation, and our laws, so far as they have gone, are in the contrary direction. The act of 1831 not only authorized donations of land to counties, but it contains, as do other statutes on the same subject, stringent provisions, in cases where the land is not donated, for insuring its purchase at the lowest price. If the commissioners can acquire land at the 'lowest bid'—which may be one cent—why may they not acquire it as a gift?"

From all this we reach the conclusion that Pike County has a valid easement for highway purposes over and upon the strips of land designated as Stone Quarry Road and Lazar-Bricker Road, that the commissioners have designated and opened them as public highways and the public have used and are using them for such purpose.

It is said in **20 O. Jur., 640,** that: "A conveyance of land to the county commissioners for a county road, the acceptance of the grant by the commissioners, the opening of the road by their order and its subsequent use as such by the public, and by the proper authorities, constitutes a legal public highway, notwithstanding the want of statutory proceedings for its establishment."

In 25 Am. Jur., 341, it is said: "A way is none the less a public highway because it is used for purposes of pleasure and recreation only."

(2) The question remains as to the authority to expend public money in repairing and maintaining these roads. It should be said at once that as the commissioners have opened these roads for public travel, the duty devolved upon them to use reasonable care to keep them reasonably safe for travel in the ordinary mode. And the statutes confer ample authority upon them not only to improve established roads by entirely reconstructing them, but also to repair roads already improved, and this they may do either through independent contractors or by force account by complying with the relevant statutes in awarding the contract or in making use of force account.

Of course, in spending public funds for road purposes, as for all other purposes, the county commissioners must comply with the relevant statutes prescribing the mode and manner thereof. This action does not require any more specific prescription. The occasion for greater particularity might arise when a specific action on the part of the county commissioners should be initiated or contemplated.

For these reasons, the Court finds on the issues joined in favor of the defendants on the plaintiff's amended petition and on the defendant's cross-petition.

If desired, a separate finding of facts and conclusions of law, in conformity with this opinion, may be prepared and presented as provided in Rule IX of this Court.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur.