MASTERA, APPELLANT, *v.*
CITY OF ALLIANCE, APPELLEE.

(No. CA-7116—Decided
August 24, 1987.)

*Robert J. Swan,* for appellant.
*Ulmer, Berne, Laronge, Glickman & Curtis, Jeffrey W. Van Wagner* and *Ivan G. Huggins,* for appellee.

WISE, J. Plaintiff-appellant, Holly Mastera ("appellant"), appeals from the judgment of the Court of Common Pleas of Stark County, which entered summary judgment against her and in favor of defendant-appellee, city of Alliance ("Alliance"). Appellant argues the following sole assignment of error:

"The trial court erred in granting summary judgment in favor of the appellee."

Alliance has filed a motion "to strike supplemental assignments of error and brief of plaintiff-appellant." Alliance filed this motion in response to a brief filed by appellant following oral argument. The supplemental brief attempts to point out in the record the evidence supporting the appellant's previously assigned error. Contrary to its caption, the supplemental brief contains no assignment of error. The supplemental brief addresses certain deficiencies of appellant's original meager brief. But the supplemental brief was not filed within rule (as a reply brief). Nor did the appellant ask leave of court to file a supplemental brief. Alliance contends that the appellant seeks in the supplemental brief to raise additional issues not previously addressed by appellant. Although the supplemental brief assigns no new error and raises no new legal issues, it does raise a number of factual points never specifically argued previously (which are crucial to appellant's case). Therefore, we find Alliance's motion to strike well-taken, and said supplemental brief is stricken, and not utilized in the writing of this opinion.

This case arises from a motor vehicle accident which occurred in Alliance on December 21, 1983, between the appellant and defendant James Brown. When the accident occurred, the appellant was traveling northwest on North Freedom Avenue. Brown was traveling southwest on a gravel road which intersected with Freedom Avenue. At the time of the incident, there was no stop sign at the intersection of the gravel road and Freedom Avenue. Appellant contends that Alliance maintained this gravel road and maintained it negligently.

The trial court found that the city of Alliance was entitled to judgment as a matter of law, "there being no genuine issue of material fact as to whether the City of Alliance had in fact accepted the concourse or roadway in question as a dedicated street." This holding comports with Alliance's contention that, "[s]ince the gravel road at issue was never duly dedicated, no responsibility for its condition rested with [Alliance]."

Case Law

"A dedication is a voluntary and

intentional gift or donation of land, or of an easement or interest therein for some public use, made by the owner of the land, and accepted for such use, by or on behalf of the public. * * * Dedication can be of two kinds: statutory and common-law. A statutory dedication is one made in conformity with the provisions of those statutes providing for such dedication." (Citations omitted.) *Becker* v. *Cox* (June 10, 1985), Butler App. No. CA84-04-044, unreported, at 6-7. It is not disputed that the gravel road in question in the case at bar was not statutorily dedicated at the time of the accident. Thus, if there was a dedication in the case at bar, it would have to be a common-law dedication.

Generally, in order to show that a street is common-law dedicated, it is necessary to demonstrate the following three elements: "(1) the existence of an intention on the part of the owner to make such dedication; (2) an actual offer on the part of the owner, evidenced by some unequivocal act, to make such dedication; and (3) the acceptance of such offer by or on behalf of the public." *Vermilion* v. *Dickason* (1976), 53 Ohio App. 2d 138, 7 O.O. 3d 98, 372 N.E. 2d 608, paragraph one of the syllabus; accord *Lessee of Fulton* v. *Mehrenfeld* (1858), 8 Ohio St. 440, 446.

"The intention to make a dedication may be * * * expressly declared, or implied, as when dedication arises by operation of law from the acts of the owner of the land dedicated." *Becker, supra,* at 7-8; accord *Weston Paper & Mfg. Co.* v. *Tincher* (1957), 105 Ohio App. 465, 6 O.O. 2d 212, 152 N.E. 2d 822. Anything which fully demonstrates the intention of the donor is effectual. *State, ex rel. Litterst,* v. *Smith* (1950), 87 Ohio App. 513, 57 Ohio Law Abs. 519, 43 O.O. 310, 94 N.E. 2d 802. Intention to dedicate may be demonstrated by the use of the property by the public, with the mere silent acquiescence therein of the owner, for a period sufficient to warrant the in-

ference of an intention to dedicate, provided that the owner should have had knowledge of the fact of such use. 35 Ohio Jurisprudence 3d (1982) 129, Dedication, Section 30.

The case law in Ohio indicates that dedication by user differs from property rights created by prescription in that no specific length of time is necessary to constitute a valid dedication, and a dedication may result even though the period of use and acquiescence is less than twenty-one years. *Doud* v. *Cincinnati* (1949), 152 Ohio St. 132, 39 O.O. 441, 87 N.E. 2d 243. Although periods of less than twenty-one years might warrant an inference of the existence of an intention to dedicate, acquiescence for less than twenty-one years would not be sufficient to warrant a conclusive presumption thereof. *Penquite* v. *Lawrence* (1860), 11 Ohio St. 274; see, also, *Doud, supra.*

Moreover, public use which is not inconsistent with the owner's use and enjoyment of his rights of private ownership will not demonstrate intention to dedicate. 35 Ohio Jurisprudence 3d, *supra,* at 130. Thus, if a roadway is maintained by an owner for his private use, and it is also used incidentally by the public, only a permissive use is presumed (regardless how long the public use). *Railroad Co.* v. *Roseville* (1907), 76 Ohio St. 108, 81 N.E. 178; see, also, *Bachman* v. *Shreve* (Mar. 24, 1982), Monroe App. No. 547, unreported.

An actual offer, in cases where there is no express offer, often may be inferred from the same evidence that demonstrates the intention of the owner to dedicate.

The element of acceptance of an offer to dedicate land often provides a more difficult issue to resolve. "No formal acceptance as a matter of record is necessary to effectuate a common-law dedication." *Becker, supra,* at 9; see, also, *Pennsylvania RR. Co.* v. *Girard* (C.A.6, 1954), 210 F. 2d 437, 54 O.O.

243. Generally an acceptance of private property for a public use may result from the continuous use of such property by the public, for a period of time sufficient to warrant an inference of an acceptance. *Doud, supra,* at paragraph one of the syllabus.

In *Doud,* the city had connected public sewers into a private sewer located under private property and had used it as a public sewer for several years. The Ohio Supreme Court has subsequently stated that the basis for the decision in *Doud* (finding the sewer to be dedicated) was estoppel. *State, ex rel. Fitzthum,* v. *Turinsky* (1961), 172 Ohio St. 148, 151, 15 O.O. 2d 284, 286, 174 N.E. 2d 240, 242.

The Supreme Court in *Fitzthum* stated at 152, 15 O.O. 2d at 286, 174 N.E. 2d at 243:

"* * * to constitute an acceptance of land dedicated for street or road purposes mere user by the public, without an acceptance by responsible public authorities, is not sufficient to charge those authorities with the duty of maintenance."

The court listed two factors as determinative of this issue. The first was the fact that a negligent violation of the duty to maintain streets imposes on the political subdivision liability for damages suffered as a result thereof:

"It would seem logical that some acceptance of the responsibility and consequent potential liability should be required prior to imposing such responsibility and liability through the unilateral act of a person or group of persons who decide to dedicate their land for the use by the public as roads or streets." *Id.* at 153, 15 O.O. 2d at 287, 174 N.E. 2d at 243.

Second, the court noted that the maintenance of streets and roads is very expensive and time consuming. In our expanding communities, imposing such a heavy burden upon a particular political subdivision was thought to be unrealistic and improvident.

The court went on to state:

"It can not be denied, and it is not the intention in this case to deny, that user of a street or road by the public following an intention to dedicate to the public may well constitute such acceptance of the dedication as to estop the owners of the fee from interfering with the continued use by the abutting-property owners and the public. Nor do we intend to say that an acceptance can not *be implied as a result of the authorities taking some positive action such as the actual improvement of a street or road."* (Emphasis added.) *Id.*

Thus, acceptance can be manifested by improvements to or maintenance of a street or road as alleged in the case at bar.

Statutory Law

Alliance relies upon R.C. 723.03, which provides:

"A street or alley, dedicated to public use by the proprietor of ground in any municipal corporation, shall not be a public street or alley, or under the care or control of the legislative authority of such municipal corporation, unless the dedication is accepted and confirmed by an ordinance specially passed for such purpose."

The requirement of R.C. 723.03, that a dedication shall be accepted by ordinance, does not, as contended, apply here and require affirmance of judgment. "This section relates to statutory dedication and was not intended to prevent common-law dedication. * * * It does not apply to cases where streets are established by public use and by act of city authorities improving them as such." (Citations omitted.) *Pennsylvania RR. Co., supra,* at 442, 54 O.O. at 247. If a city does not wish to maintain a roadway which is not dedicated, it need not. But if it undertakes to do so, it must do so responsibly.

Moreover, certain statutory provisions provide for liability on the part of

a municipality for failing to keep "public highways, streets, avenues, alleys, sidewalks * * * open, in repair, and free from nuisance." R.C. 723.01; R.C. 2744.02(B)(3). "Public" highways, streets, etc. are not defined, and dedication is not referred to.

### Summary Judgment

Since this matter was resolved on summary judgment, we must view the record in the light most favorable to the appellant as the non-moving party. Civ. R. 56(C). Appellant must demonstrate a material fact dispute or that Alliance was not entitled to summary judgment as a matter of law.

### Facts

Defendant Brown stated in his deposition that he thought he was driving on a public roadway. Brown stated that there was a standard sign posted on the gravel road indicating a railroad crossing. Brown stated that he had driven into Alliance on State Route 62 and left that route because of a detour. As Brown was trying to find his way back to a main state highway, he wound up traveling northwest on Rush Street near the scene of the accident. He turned left off Rush Street and onto the gravel road because Rush Street was blocked off at the point where the two roads intersected. The gravel road was at that point the only means of proceeding, other than turning completely around and going back down Rush Street.

Terrance R. Hohnhorst, a professional civil engineer and land surveyor, testified that the gravel road was probably an existing street, but had been abandoned or vacated, based upon his review of a county map of the area in question. Hohnhorst also testified that when he went out to survey the area in question on August 28, 1985, there was a stop sign on the gravel road at the intersection of the gravel road and Freedom Avenue.

Hohnhorst stated that when he first surveyed this area, in 1979, "there was a visible street there at that time." Hohnhorst testified that when he went out to survey the area, he thought the gravel road was an improved road which he considered to be Third Street. Hohnhorst thought that Alliance did the improvements to the gravel road, although he had no personal knowledge of that fact.

Richard Fair, the city civil engineer for Alliance, testified that the gravel road was not a dedicated street. Fair did not have personal knowledge of a city official ordering any maintenance of the gravel road.

The deposition of Robert J. Ketterer was also taken. He is an owner and partner in Warehouse Properties. Warehouse Properties owns the land abutting the gravel road. He stated, when asked if the gravel road was a street, "to my understanding, Third Street." Ketterer stated that the gravel road was occasionally used by traffic, and he had seen vehicles using it on occasion.

During the course of the depositions taken, reference was made to two police reports filed regarding the accident that is the basis of this lawsuit. One report indicates that Brown was charged with the offense of "driving onto roadway from place other than roadway," a violation of Alliance City Ordinance 331.22. That report goes on to state that Brown's car was "traveling westbound on a portion of land that appears to be a roadway running between N. Freedom and Rush St." The other police report states that "a stop sign is supposed to be erected on 3rd Street but the stop sign or the post to hold the sign were both missing at the time of the crash." On the map drawn by the officer making the report, there is an arrow pointing to the intersection of the gravel road and Freedom Avenue, with the statement, "stop sign

should be here." That report listed "downed traffic sign/device" as a contributing factor in the accident.

### Conclusion

Although it is far from conclusive, we find that this evidence raises a genuine issue of material fact that cannot be resolved on summary judgment. The issue of fact is whether Alliance maintained the gravel road and held it out to be a public street demonstrating acceptance so as to be estopped from disclaiming liability. Thus, summary judgment is not appropriate as a matter of law in the case at bar.

Accordingly, we sustain appellant's assignment of error and reverse the judgment of the Court of Common Pleas of Stark County. This cause is remanded for further proceedings in accordance with law not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

PUTMAN, P.J., and HOFFMAN, J., concur.