[Cite as *McNamara v. Wilson*, 2014-Ohio-4520.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| JERYL D. MCNAMARA, et al., | : | |
| Plaintiffs-Appellees, | : | CASE NO. CA2013-12-239 |
| | : | O P I N I O N |
| - vs - | | 10/13/2014 |
| | : | |
| DARRELL WILSON, et al., | : | |
| Defendants-Appellants. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2012-04-1272


David H. Landis, 246 High Street, Hamilton, Ohio 45011, for plaintiffs-appellees, Jeryl D. McNamara, Ida D. McNamara, Jason Jackson and Tonya Jackson

Rendigs, Fry, Kiely & Dennis, LLP, Donald C. Adams, Michael P. Foley, James J. Englert, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202, for defendants/third-party plaintiffs/appellants, Darrell Wilson and Lorette McKibbin

Millikin & Fitton Law Firm, Steven A. Tooman, Salvatore A. Gilene, 9032 Union Centre Blvd., Suite 200, West Chester, Ohio 45069, for third-party defendant/appellee, Metro Parks of Butler County

Edward J. McTigue, 810 Sycamore Street, Sixth Floor, Cincinnati, Ohio 45202, for third-party defendant/appellee, Rockdale Holdings, LLC

Dan L. Ferguson, Susan R. Schultz, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for third-party defendant/appellee, Butler County, Ohio

Stephen J. Wolterman, 530 Wessel Drive, Suite 2A, Fairfield, Ohio 45014, for third-party defendant/appellee, Cassandra Anderson

**RINGLAND, P.J.**

{¶ 1} Defendants-appellants and third-party plaintiffs, Darrell Wilson and Lorette McKibbin, appeal from a decision in the Butler County Court of Common Pleas granting summary judgment in favor of numerous plaintiffs-appellees and third-party defendants-appellees in an action finding an easement traversing McKibbin's property.

{¶ 2} This case involves a dispute over whether plaintiffs-appellees and third-party defendants-appellees have a right to traverse McKibbin's property via an easement. The purported easement is hereafter referred to as "drive." Plaintiffs-appellees initially filed suit requesting a preliminary injunction to keep defendants-appellants from impeding their use of the drive. Plaintiffs-appellees alleged that Wilson had interfered with their access to the drive in the past and was planning to impede their access in the future. Defendants-appellants became third-party plaintiffs by filing a counterclaim, third-party complaint, and amended third-party complaint against other property owners who might assert an easement interest.

## I. Parties

### A. Defendants-Appellants

{¶ 3} McKibbin has owned a residence located at 4831 Rockdale Road, Liberty Township, Ohio, since 2000. McKibbin's property, known as Lot 13, is a part of the Rockdale Subdivision. When McKibbin came into possession of the property, the deed stated that it was "subject to the roadway across the west end of said Lot[.]" Wilson also resides on this property.

### B. Plaintiffs-Appellees

{¶ 4} Plaintiffs-appellees, Jeryl D. and Ida D. McNamara (the McNamaras), own real property located at 4930 Canal Road. The McNamaras have owned the property since 1997 when the property was conveyed to them from Ida's mother. Ida intermittently lived with her mother on the property beginning in 1981. Plaintiffs-appellees, Jason and Tonya Jackson

(the Jacksons), have a residence on real property located at 4834 Canal Road. Jason Jackson initially acquired the property jointly with his father in 2009. The properties along Canal Road are located northeast of Lot 13. Plaintiff, RockDock, LLC, has a property interest in numerous parcels located north and northwest of Lot 13 via a land installment contract with third-party defendant-appellee, Rockdale Holdings, LLC (Rockdale).[1]

### C. Third-Party Defendants-Appellees

{¶ 5} Third-party defendant-appellee, Cassandra Anderson, owns property along Canal Road. Anderson's grandfather purchased the property in 1921, which she inherited in 2008. Third-party defendant-appellee, Rockdale, owns numerous parcels located north and northwest of Lot 13. Third-party defendant-appellee, MetroParks of Butler County, owns property that was formerly a part of the land owned by the state of Ohio for the Miami and Erie Canal, northeast of Lot 13. Third-party defendant-appellee, Butler County, Ohio Water and Sewer District, maintains water and sewer lines in the area.

### D. Reference to Parties

{¶ 6} For ease of discussion, Wilson and McKibbin will be referred to as "appellants." McKibbin's property will be referred to as "Lot 13." The properties owned by Rockdale under a land installment contract in favor of RockDock, will be referred to as "Rockdale." Collectively, plaintiffs-appellees and third-party defendants-appellees the McNamaras, the Jacksons, Anderson, MetroParks, and Rockdale will be referred to as "landowners."

### II. Background

### A. Drive

{¶ 7} A drive is located on the western portion of Lot 13 beginning at Rockdale Road

---

1. While a plaintiff in this case, RockDock did not file a brief on appeal.

and extending northward eventually onto Rockdale's property.[2] The drive then connects to a gravel road behind an old factory building on Rockdale's property that allows landowners to traverse eastward to access their properties along Canal Road. Landowners contend they have always used the drive to access their properties. When McKibbin purchased the property in 2000, she posted a "Private Drive, No trespassing" sign at southbound side of the drive. Even after posting the sign, landowners continued to use the drive.

### B. 1901 Deed

**{¶ 8}** In 1901, the American Strawboard Company conveyed 7.788 acres in Section 10 of Liberty Township and 10.5 acres in Section 11 of Lemon Township to Ellsworth Verbryke. The deed reserved to American Strawboard "the use of the roadways, as they now exist from the center of the Middletown and Hamilton Pike to the Miami and Erie Canal for a private way to and from the American Strawboard Company's ground." Appellants concede that an express private easement exists over Lot 13 in favor of Rockdale by virtue of a reservation in a 1901 deed conveying land from American Strawboard to Verbryke in respect to Lots 15, 17-23, and 25 currently owned by Rockdale as these Lots were part of the original American Strawboard land. Appellants dispute that Rockdale has any easement over Lot 13 in regard to Rockdale's remaining parcels.

### C. 1904 Plat

**{¶ 9}** Subsequently, in 1904, Verbryke created Rockdale Subdivision when he subdivided the property he purchased from American Strawboard into Lots 1 through 13. The plat is dated December 2, 1904 and recorded in Butler County. On the plat, Verbryke states "we hereby dedicate all streets and alleys and roads shown on the above plat, to

---

2. Before reaching Rockdale's property, the drive traverses Robert and Rebecca Long's property. The Longs were original defendants who were dismissed from the suit and later brought back into the case as third-party defendants. The Longs own a residential property located on Rockdale Road and are not a party to this appeal.

public use * * *." Three areas of the plat are labeled "ROAD WAY." Two of these areas are delineated with solid lines while the third area, the drive in contention, is merely labeled with dotted lines. Appellants contend that the two areas labeled and defined by solid lines are particularly described to include their courses, boundaries, and extent to satisfy statutory dedication of the roadways. In contrast, appellants assert that the dotted lines notating the drive on the west side of Lot 13 are not sufficient to conform to law for the statutory dedication of a roadway neither by standards today nor in 1904.

### D. 1981 Easement

{¶ 10} It appears that there is no dispute that a written easement agreement executed in 1981, sometimes referred to as the Nicolet Easement, granted the properties owned by the McNamaras, the Jacksons, Anderson, and MetroParks an easement over Rockdale's properties. Appellants assert that the 1981 easement agreement does not grant any properties of landowners an easement over Lot 13 because the then-owners of Lot 13 did not participate in the easement agreement.

### E. 1996 Easement

{¶ 11} Additionally, there is no dispute that a 1996 easement agreement granted the McNamaras' property an easement over MetroPark's property. Again, appellants assert that the easement agreement does not grant any properties of landowners an easement over Lot 13 because the then-owners of Lot 13 did not participate in the easement agreement.

### F. Actions Below

{¶ 12} Numerous summary judgment motions were filed by landowners and Butler County Water and Sewer District. The trial court granted summary judgment in favor of landowners, finding that the properties owned by Rockdale, Anderson, the Jacksons, the McNamaras, and MetroParks, all possessed a "private, express right of way easement" over Lot 13. In describing the easement, the trial court stated:

Lot Number 13 of the Rockdale Subdivision of Lots is burdened as a servient estate with respect to a private, express right of way easement over the platted roadway aforementioned, which runs from Rockdale Road through the west end of Lot Number 13, to the Cincinnati and Dayton Rail Road Right of Way as depicted in the 1904 Plat.

Further relevant to this appeal, the trial court granted summary judgment in favor of Butler County Water and Sewer District, finding a public easement exists in favor of Butler County Water and Sewer District over Lot 13. Additionally, the trial court enjoined appellants "from prohibiting or interfering with the reasonable and lawful uses of the right of way easement declared above by the owners of the dominant estates set forth above."

{¶ 13} Appellants now appeal from the trial court's grant of summary judgment in favor landowners and Butler County Water and Sewer District, asserting three assignments of error for review.

### III. Standard of Review

{¶ 14} Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial. *Roberts v. RMB Ents., Inc.,* 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.). This court's review of a trial court's ruling on a summary judgment motion is de novo. *Lindsay P. v. Towne Properties Asset Mgt. Co., Ltd.,* 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124, ¶ 16. In applying the de novo standard, the appellate court is required to "us[e] the same standard that the trial court should have used, and * * * examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Bravard v. Curran,* 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.)

{¶ 15} Civ.R. 56 sets forth the summary judgment standard and requires that (1) there be no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion

- 6 -

being adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 16} In response, the nonmoving party "may not rest on the mere allegations of his pleading, but * * * by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996). In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Walters v. Middletown Properties Co.*, 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 10. A dispute of fact can be considered "material" if it affects the outcome of the litigation. *Myers v. Jamar Ents.*, 12th Dist. Clermont No. CA2001-06-056, 2001 WL 1567352,*2 (Dec. 10, 2001). A dispute of fact can be considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.* We are mindful of these principles in addressing the following assignments of error.

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE TRIAL COURT ERRED IN FINDING AN EXPRESS PRIVATE EASEMENT OVER THE ROADWAY BURDENING LOT 13 IN FAVOR OF PROPERTIES NOW OWNED BY MCNAMARA, JACKSON, ANDERSON, AND METROPARKS BECAUSE THOSE PROPERTIES ARE LOCATED OUTSIDE THE LIMITS OF THAT EASEMENT'S DOMINANT ESTATE.

{¶ 19} Appellants argue that the properties owned by the McNamaras, the Jacksons, Anderson, and MetroParks are not dominant estates entitled to the use of an express private easement burdening McKibbin's property as the servient estate, Lot 13, because these properties were not specifically identified as being part of the dominant estate in the 1901

deed conveying land from American Strawboard to Verbryke or in any other instrument containing an express grant. Appellants further contend that only Lots 15, 17-23, and 25 currently owned by Rockdale possess an express private easement over Lot 13 because these were the only lots owned by Rockdale that were a part of American Strawboard's original dominant estate.

{¶ 20} Landowners assert we should affirm the trial court's grant of summary judgment on the basis that there is an express private easement in favor of landowners over Lot 13. The trial court stated that Rockdale, Anderson, the Jacksons, the McNamaras, and MetroParks, all possessed a "private, express right of way easement" over Lot 13 "as depicted in the 1904 Plat." Landowners argue that, at the very least, a public easement exists on the basis of the 1904 plat. In the alternative, landowners argue we should find that they have established an easement by prescription.

{¶ 21} In response, appellants assert that we cannot rule on landowners' arguments because landowners failed to file a cross-appeal and specifically raise these issues as an assignment of error. Nevertheless, while landowners rely on grounds other than that relied upon by the trial court, they do not seek to change the judgment or order. Consequently, landowners were not required to file a cross-appeal. *See* App.R. 3(C)(2). Additionally, because review of a grant of summary judgment is de novo, we independently review the record and employ the same standard as the trial court. *Pangallo v. Adkins*, 12th Dist. No. Clermont CA2014-02-019, 2014-Ohio-3082, ¶ 9. As such, we will address both appellants' and landowners' arguments in turn.

### IV. Analysis

### A. Private Easement

{¶ 22} Appellants assert that the trial court erred in finding an express private easement in favor of properties owned by the McNamaras, the Jacksons, Anderson,

MetroParks, and certain properties owned by Rockdale, and burdening Lot 13. Appellants contend that no instrument expressly granted a private easement to landowners, absent the 1901 deed from American Strawboard to Verbryke containing an express private easement in favor of Lots 15, 17-23, and 25 currently owned by Rockdale.

{¶ 23} An easement, as defined by the Ohio Supreme Court, is "'a right without profit, created by grant or prescription, which the owner of one estate [called the dominant estate] may exercise in or over the estate of another [called the servient estate] for the benefit of the former.'" (Bracketed material sic.) *Trattar v. Rausch*, 154 Ohio St. 286, 291(1950), quoting *Yeager v. Tuning*, 79 Ohio St. 121, 124 (1908). The dominant estate may acquire an easement by prescription or by an expressed or implied grant. *Id.* A reservation of an easement is not operative in favor of land not described in the conveyance. *Ricelli v. Atkinson*, 99 Ohio App. 175 (6th Dist.1955), paragraph two of the syllabus.

{¶ 24} In this instance, the trial court found an express private easement in favor of the properties owned by Rockdale, Anderson, the Jacksons, the McNamaras, and MetroParks. The parties agree that the some of the properties owned by Rockdale possess an express private easement over Lot 13 on the basis of the 1901 deed from American Strawboard to Verbryke, including Lots 15, 17-23, and 25. Appellants contend, however, that no express private easement was created in favor of the residual landowners, including the remaining properties owned by Rockdale, because these properties were never part of the dominate estate owned by American Strawboard.

{¶ 25} Appellants attached to their memorandum in opposition to summary judgment an affidavit of G. Robert Hines, an Ohio real estate attorney. Hines averred that landowners' property, including the remaining properties owned by Rockdale, were never part of American Strawboard's dominant estate. Consequently, these properties could not benefit from the express private easement created by the 1901 deed. Additionally, Hines averred that the two

easement agreements, one in 1981 and one in 1996, attached to the motion for summary judgment of the McNamaras and the Jacksons did not burden Lot 13 with any express private easement because the then-owners of Lot 13 did not join in either instrument. In contrast, landowners did not present evidence or assert that their properties were once part of the American Strawboard land or joined in the easement agreements. Consequently, the affidavit of Hines, at the very least, creates a genuine issue of material fact as to whether these properties were once a part of the dominant estate or previous owners of Lot 13 had joined in the easement agreements to create an express private easement burdening Lot 13 in favor of landowners. As such, summary judgment is precluded on the basis that an express private easement was created in favor of landowners' properties, absent Lots 15, 17-23, and 25 owned by Rockdale.

## B. Public Easement

{¶ 26} Landowners argue that they are entitled to use the drive because there is a public easement as evidenced by the language utilized on the 1904 plat that is referenced by the trial court in its decision. In response, appellants assert that no public easement exists because there was no dedication of the drive as required by statute. Landowners do not contend, however, that any statutory process was conformed to in creating a public easement. Rather, landowners assert that by looking at the plain language of the plat, a roadway was created for the benefit of the public, including landowners. After a review of the record, we find that there is an issue of material fact as to whether the plain language included in the 1904 plat created a public easement.

{¶ 27} A dedication of an easement for public use may occur by statute or by common law. *Becker v. Cox*, 12th Dist. Butler No. CA84-04-044, 1985 WL 8688, *4 (June 10, 1985); *Neeley v. Green*, 73 Ohio App.3d 167, 170 (12th Dist.1991). "A dedication is a voluntary and intentional gift or donation of land, or of an easement or interest therein for some public use,

made by the owner of the land, and accepted for such use, by or on behalf of the public." *Cox* at *4, citing *Todd v. Pittsburgh, Fort Wayne & Chicago RR. Co.*, 19 Ohio St. 514 (1869).

{¶ 28} Three elements are required to prove a common law dedication: (1) the existence of an intention on the part of the owner to make such dedication; (2) an actual offer on the part of the owner, evidenced by some unequivocal act, to make such dedication; and (3) the acceptance of such offer by or on behalf of the public. *Becker* at *4; *Neeley* at 170. *See Doud v. Cincinnati*, 152 Ohio St. 132 (1949).

{¶ 29} Evidence showing intent to dedicate must be clear and convincing. *Becker* at *4; *State, ex rel. Mentor Lagoons, Inc., v. Wyant*, 166 Ohio St. 169 (1957). The intention to make a dedication may be express or implied. *State, ex rel. Litterst, v. Smith*, 87 Ohio App. 513 (4th Dist.1950). The platting or laying out of land may result in a common law dedication even when such is insufficient to constitute a statutory dedication. *Application of Loose*, 107 Ohio App. 47, 50 (10th Dist.1958).

{¶ 30} "No formal acceptance as a matter of record is necessary to effectuate a common-law dedication." *Becker* at *5. Rather, as we outlined in *Neeley*, acceptance can either be accomplished by the public's continuous use of the property or through actions of authorities such as performing maintenance or improving a road. *Neeley* at 170. *See Doud v. Cincinnati*, 152 Ohio St. 132 (1949); *State ex rel. Fitzthum v. Turinsky*, 172 Ohio St. 148, 153 (1961). "Thus, a dedication and acceptance of private property for a public use may result from the use of such property by the public, with the silent acquiescence of the owner, for a period of time sufficient to warrant an inference of an intention to make such dedication and to constitute such acceptance." *Neeley* at 171, citing *Doud* at paragraph one of the syllabus. "Acceptance may be inferred from the circumstances surrounding the case and may be accomplished by a continuous use of the property for public purposes." *Beauchamp v. Hamilton Twp. Trustees*, 10th Dist. Franklin No. 93APE09-1331, 1994 WL 171149, *3

- 11 -

(May 5, 1994), citing *Doud* at 135.

{¶ 31} In the present case, a recorded plat in 1904 delineates the drive as "ROAD WAY." While it does not describe the drive as specifically as two additional roadways noted on the plat, the drive is clearly labeled as "ROAD WAY." Below the drawing of the plat, the grantor states, "we hereby dedicate all streets and alleys and roads shown on the above plat, to public use * * *." Through this statement and recordation of the plat, there is both an intent by the owner and an unequivocal act evidenced by the owner to dedicate the drive to public use. *See Scott v. Snyder*, 73 Ohio App. 424 (2d Dist.1943) (intention for purposes of common law dedication for a park was met when recorded plat delineated one of the lots as a "Children's Playground").

{¶ 32} It is unclear from the Civ.R. 56 evidence, however, as to whether there was implicit acceptance resulting in the common law dedication of the drive. In the summary judgment motion by the McNamaras and the Jacksons, two affidavits were attached, an affidavit of Ida McNamara and an affidavit of Walter Kinch, a neighbor who lives on Rockdale Road. Ida McNamara alleged in her affidavit that traffic along the drive included semi-tractor trailers, straight trucks, and automobiles. Additionally, Ida McNamara's affidavit revealed that traffic along the drive included use by landowners to reach their properties. Kinch averred in his affidavit that he rode his bike down the drive in the mid-1950s and that the drive was used by people going to and from the factory and also to the nearby river. McKibbin's affidavit revealed that she had granted permission to landowners to use the drive.

{¶ 33} From these affidavits, we cannot determine if or how often members of the public utilized the drive. As discussed above, because Rockdale possessed an express private easement as evidenced by the 1901 deed pertaining to certain Lots, the use of the drive may have been primarily for the benefit of Rockdale, rather than the general public. Consequently, with the circumstances surrounding this case, there is an issue of fact as to

whether there was an implied acceptance by public use sufficient for a common law dedication of the drive. *See Snyder v. Monroe Twp. Trustees*, 110 Ohio App.3d 443, 455-456 (2d Dist.1996) (when it is unclear from the record if or how often members of the public use the easement, then an appellate court cannot find acceptance of common law dedication of easement); *Beauchamp*, 10th Dist. Franklin No. 93APE09-1331, 1994 WL 171149 (when easement only benefits a small number of residents in the immediate vicinity, then there is insufficient evidence to establish acceptance for purposes of common law dedication).

{¶ 34} Moreover, we are unable to determine whether there was an acceptance of any dedication on the basis of maintenance. The only evidence regarding road improvements was in Kinch's affidavit whereby he averred that to the best of his knowledge, the drive was maintained by Butler County. In contrast, McKibbin averred that Butler County considered the drive private. Butler County in its motion for summary judgment alleged that it had been treating the drive as private. Accordingly, on this record there is a question of fact as to whether there was acceptance of a common law dedication by way of maintenance. Because questions of fact exist as to whether there was an acceptance of a common law dedication of the drive as a public roadway, summary judgment is improper on this basis.

### C. Prescriptive Easement

{¶ 35} Landowners also assert that a prescriptive easement has been established over Lot 13. Appellants, however, contend that there is a genuine issue of material fact as to whether the elements required for a prescriptive easement have been met. While argued below, the trial court did not consider whether landowners' properties possess a prescriptive easement over Lot 13 as it found an express easement in landowners' favor. From the record before us, we cannot preclude that genuine issues of material fact exist as to whether a prescriptive easement has been established in favor of landowners' properties. Consequently, we remand this matter to the trial court for further analysis regarding whether

landowners established a prescriptive easement.

## D. Conclusion

{¶ 36} Because questions of fact remain as to whether an express private easement exists in favor of landowners' properties absent Lots 15, 17-23, and 25 owned by Rockdale, the trial court erred in granting summary judgment in favor of landowners on this basis. Additionally, questions of fact remain as to whether a public easement burdens Lot 13 as a result of the 1904 plat. Finally, as the trial court did not address whether an easement by prescription existed, we remand this matter to the trial court for further analysis. Appellants' first assignment of error is sustained.

{¶ 37} Assignment of Error No. 2:

{¶ 38} THE TRIAL COURT ERRED IN FINDING A PUBLIC EASEMENT BURDENING LOT 13 IN FAVOR OF BUTLER COUNTY WATER AND SEWER DISTRICT.

{¶ 39} Appellants assert that the trial court erred in granting a public easement in favor of Butler County Water and Sewer District. Butler County Water and Sewer District concedes that it may not possess a public easement over Lot 13, but contends that it is able to access its main sewer line located on Rockdale's property per permission of Rockdale because at least some of Rockdale's properties have an express private easement burdening Lot 13. Appellants concede that Butler County Water and Sewer District may access its sewer line per permission of Rockdale. Consequently, and because we determined in appellants' first assignment of error that genuine issues of material fact exist as to whether a public easement burdens Lot 13, appellants' second assignment of error is rendered moot.

{¶ 40} Assignment of Error No. 3:

{¶ 41} THE TRIAL COURT ERRED IN GRANTING AN INJUNCTION ENJOINING APPELLANTS FROM PROHIBITING OR INTERFERING WITH THE REASONABLE AND LAWFUL USES OF THE RIGHT OF WAY EASEMENT DECLARED BY THE COURT.

{¶ 42} Appellants argue that the trial court erred in permanently enjoining them "from prohibiting or interfering with the reasonable and lawful uses of the right of way easement declared above by the owners of the dominant estates * * *." Appellants assert that the injunction is premised upon the existence of easements burdening Lot 13 in favor of landowners. Additionally, appellants argue that the injunction was erroneous in respect to Rockdale because there was no clear and convincing evidence to support it. Appellants further contend if the easement was proper, the easement was not sufficiently defined as to its usage, width, and location in order to give notice to either party as to what constitutes interference.

{¶ 43} Injunctive relief is an equitable remedy that is available only where there is no adequate remedy at law. *Haig v. Ohio State Bd. of Edn.*, 62 Ohio St.3d 507, 510 (1992). In order to obtain a permanent injunction, a party must show by clear and convincing evidence that immediate and irreparable injury, loss, or damage will result to the applicant. *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267-268 (1st Dist.2000). Irreparable harm is an injury for which there is no plain, adequate, and complete remedy at law, and for which money damages would be impossible, difficult, or incomplete. *1st Natl. Bank v. Mountain Agency, L.L.C.*, 12th Dist. Clermont No. CA2008-05-056, 2009-Ohio-2202, ¶ 47. When a court seeks to restrict a landowner's interference with the easement-holder's enjoyment of an easement, such landowner's activity should be restricted to no more than is required to eliminate the interference. *Christensen v. Hilltop Sportsman Club, Inc.*, 61 Ohio App.3d 807 (4th Dist.1990).

{¶ 44} Civ.R. 65(D) provides that "[e]very order granting an injunction * * * shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained * * * [.]" In order to satisfy the rule's "form and scope" requirements, an injunction

must be sufficiently specific that "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 60 (1990).

{¶ 45} Here, because there are questions of fact as to whether such an easement actually exists in favor of the properties of landowners, absent certain properties owned by Rockdale, there is yet to be a determination on the merits. Consequently, the trial court erred in granting summary judgment in favor of landowners by permanently enjoining appellants from interfering with the reasonable use of an easement.

{¶ 46} In regard to Rockdale, appellants concede that injunctive relief may be granted where there is clear and convincing proof of interference with an easement, but contend that there was no clear and convincing evidence of immediate and irreparable injury when the trial court granted the permanent injunction because all evidence presented regarding interference occurred before a temporary restraining order was put into place. Because a temporary restraining order does not make a final adjudication on any issue, the evidence presented regarding interference of Rockdale's easement by appellants is relevant. *See Beasley v. City of E. Cleveland*, 20 Ohio App.3d 370, 374 (8th Dist.1984). Evidence was presented that Wilson removed repairs from the easement and parked his semi-tractor trailer on the drive. This evidence established by clear and convincing evidence that Rockdale was entitled to a permanent injunction as appellants did not present any evidence in response to satisfy their burden. We find that it was proper for the trial court to grant a permanent injunction as to Rockdale in regard to Lots 15, 17-23, and 25 as there is no dispute these properties have an easement burdening Lot 13.

{¶ 47} Nevertheless, we find that the trial court did not define with specificity the nature of the injunction as required by Civ.R. 65(D). In this instance, the trial court stated that Rockdale possessed an express right of way easement "as depicted in the 1904 Plat."

Furthermore, the trial court enjoined appellants "from prohibiting or interfering with the reasonable and lawful uses of the right of way easement * * *."  As the preciseness of the 1904 plat in regard to the drive is disputed and rights of the parties and the conduct prohibited are unclear, we remand for the trial court to define the easement in favor of Rockdale as required by Civ.R. 65(D).  *See Dunn v. Ransom*, 4th Dist. Pike No. 10CA806, 2011-Ohio-4253, ¶ 112-113.  Appellants' third assignment or error is overruled in part and sustained in part.

{¶ **48**} Judgment affirmed in part, reversed in part, and remanded.

S. POWELL and PIPER, JJ., concur.