[Cite as *State ex rel. Delta Lookout, L.L.C. v. Cincinnati*, 2019-Ohio-5353.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, EX REL. DELTA LOOKOUT, LLC, | : | CASE NO. C-170107 |
| and | : | |
| | : | *O P I N I O N.* |
| DELEV AND ASSOCIATES, LLC, | : | |
| Relators, | : | |
| vs. | : | |
| CITY OF CINCINNATI, | : | |
| JOHN CRANLEY, MAYOR OF THE CITY OF CINCINNATI, | : | |
| HARRY BLACK, CITY MANAGER OF THE CITY OF CINCINNATI, | : | |
| and | : | |
| MICHAEL MOORE, DIRECTOR OF TRANSPORTATION AND ENGINEERING FOR THE CITY OF CINCINNATI, | : | |
| Respondents. | : | |

Original Action in Mandamus

Judgment of the Court: Writ of Mandamus is Denied

Date of Judgment Entry: December 27, 2019

*Delev and Associates, LLC,* and *Gregory D. Delev,* for Relators,

*Paula Boggs Muething,* City Solicitor, and *Shuva J. Paul*, Senior Assistant City Solicitor, for Respondents.

**ZAYAS, Presiding Judge.**

{¶1}   Relators Delta Lookout, LLC, and Delev and Associates, LLC, filed a petition for a writ of mandamus as an original action in this court seeking an order to compel respondent city of Cincinnati to repair and maintain two streets within the city boundary.  For the following reasons, we decline to issue the writ.

### I.      Background and Procedural History

{¶2}   Delta Lookout, LLC, and Delev and Associates, LLC, (collectively, "Delta Lookout") are businesses operating in a building located in the Mt. Lookout area of the city of Cincinnati.  Delta Lookout filed this action against the city over the city's alleged failure to maintain two allegedly public streets called Willbarre Terrace and Close Court (collectively, the "disputed streets").  Delta Lookout argues that the city's failure to maintain the streets and install a proper storm water drainage system led to the erosion of a sidewall on Delta Lookout's property due to uncontrolled storm water runoff, which it argues has created a private nuisance.

{¶3}   Delta Lookout filed its petition and complaint for a writ of mandamus on March 16, 2017, which was amended on April 5, 2017.  The city filed its answer on April 19, 2017.  Delta Lookout moved for summary judgment on September 25, 2017.  The city filed a response in opposition and a cross-motion for summary judgment on January 2, 2018.  Delta Lookout filed a response in opposition to the cross-motion for summary judgment on January 17, 2018.  The parties filed a stipulated record on April 1, 2019.

{¶4}   Delta Lookout is requesting a writ of mandamus to compel the city to keep the disputed streets in repair, free from nuisance, and in a reasonably safe condition for travel in accordance with R.C. 723.01 and 735.02.  Delta Lookout is also

requesting compensatory damages in the amount of $25,000 for negligence and the creation of a nuisance on their property, the costs of the action, and attorney fees.

## II.   Analysis

### Entitlement to Mandamus

{¶5}   The first question we must address is whether Delta Lookout's complaint for a writ of mandamus is the proper avenue through which to seek relief. The city argues that mandamus is inappropriate and that Delta Lookout should have instead sought a declaratory judgment and a prohibitory injunction.  Delta Lookout contends that a declaration of rights and a prohibitory injunction would not provide a complete remedy, as it also seeks to compel the city to fulfill its statutory duties and remedy the damage caused by the city's past failure to maintain the streets.

{¶6}   In order to be entitled to a writ of mandamus, a relator must show that he "has a clear legal right to the relief prayed for, that the respondent is under a clear legal duty to perform the requested act, and the relator has no plain and adequate remedy at law."  *State ex rel. Fink v. Cincinnati*, 186 Ohio App.3d 484, 2010-Ohio-449, 928 N.E.2d 1152, ¶ 7 (1st Dist.).  "A mandamus action is thus appropriate where there is a legal basis to compel a public entity to perform its duties under the law." *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 9, citing *State ex rel. Levin v. Schremp*, 73 Ohio St.3d 733, 654 N.E.2d 1258 (1995).  "In addition, if the public entity has misinterpreted a statute, a writ of mandamus may be an available remedy."  (Internal citations omitted.)  *Id.* at 482.

{¶7}   By contrast, when a party files for a declaratory judgment the party seeks merely a declaration of its "rights, status, and other legal relations whether or not further relief is or could be claimed."  R.C. 2721.02.  A declaratory judgment by

3

itself cannot compel a government official to perform a specific legal duty. *State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL–CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 16, quoting 1 Antieau, *The Practice of Extraordinary Remedies*, Section 2.06, at 300 (1987) (" 'A declaratory action, which merely announces the existence of a duty to be performed, has generally not been deemed as adequate as the writ of mandamus, which compels performance.' "). Therefore, "a declaratory judgment must be accompanied with injunctive relief in the form of a mandatory injunction in order to successfully compel the government to act." *Gen. Motors Corp.* at 482, citing *State ex rel. Fenske v. McGovern*, 11 Ohio St.3d 129, 131, 464 N.E.2d 525 (1984).

{¶8} Here, Delta Lookout seeks a writ directing the city to recognize (according to Delta Lookout) its statutory acceptance of the disputed streets as public streets, properly repair and maintain the disputed streets, and repair the damage caused by the city's prolonged failure to maintain the disputed streets pursuant to the Revised Code. The writ, therefore, seeks to compel the city to take affirmative action. The city argues that Delta Lookout should have instead filed an action for a declaratory judgment coupled with a prohibitory injunction, but this position ignores the relief requested. "A prohibitory injunction preserves the status quo by enjoining a defendant from performing the challenged acts in the future." *Gen. Motors Corp.* at 1079, citing *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 50. "A mandatory injunction, however, is an extraordinary remedy that compels the defendant to restore a party's rights through an affirmative action." *Gen. Motors Corp.* at 1079, citing *Gratz v. Lake Erie & W. RR. Co.*, 76 Ohio St. 230, 233, 81 N.E. 239 (1907). While Delta Lookout does seek to prevent future injury by requiring the city to maintain the disputed streets as public

4

streets, Delta Lookout also seeks remediation of its eroding sidewall and compensation for this past injury. A declaratory judgment in and of itself is insufficient to provide adequate relief, and a prohibitory injunction is likewise inadequate because it does not remedy past injury. Accordingly, a mandamus action is proper because the other available alternative would not provide a complete and adequate remedy.

## Clear Legal Right to Relief

{¶9} Next, we must determine whether Delta Lookout was entitled to the requested writ by first answering whether Delta Lookout has a clear legal right to the relief prayed for. Delta Lookout argues that it has a clear legal right to relief because the city failed to fulfill its duty to maintain disputed streets that were dedicated public streets by statute, or, in the alternative, disputed streets that were dedicated and accepted as public under the rules of common law, and as a result injured Delta Lookout.

### *Statutory Dedication*

{¶10} In Ohio, property may be dedicated to public use for streets and roads pursuant to either statutory requirements or the rules of the common law. *See* R.C. 723.03; *OTR, ex rel. State Teachers' Retirement Bd. of Ohio v. City of Cincinnati*, 1st Dist. Hamilton No. C-010658, 2003-Ohio-1549, ¶ 31. R.C. 723.03 pertains to the statutory dedication of streets and acceptance by legislative authority. The statute states that

A street or alley, dedicated to public use by the proprietor of ground in

any municipal corporation, shall not be a public street or alley, or

under the care or control of the legislative authority of such municipal

5

corporation, unless the dedication is accepted and confirmed by an ordinance specially passed for such purpose.

R.C. 723.03.

{¶11} Delta Lookout admits that the city did not pass an ordinance accepting the disputed streets pursuant to R.C. 723.03, but argues that the statutory dedication of the disputed streets predated this section of the Revised Code. Delta Lookout argues that the disputed streets were dedicated and established in 1876 pursuant to the provisions of the Platting Commission Act of 1871 (the "1871 Act"). Without going into detail as to the provisions of the 1871 Act, generally the act provides for a commission whose duty it shall be "to plat such portions of the territory within its limits in which the necessary or convenient streets or alleys have not already been accepted by the corporation so as to become public streets * * *," and then declares that "no streets or alleys, except those laid down on such plat shall subsequently be in any way accepted as public streets or alleys by the municipal corporation, nor shall any of the public funds be expended in the improvement or repair of streets or alleys subsequently laid out, and not on such plat."

{¶12} In *Winslow v. City of Cincinnati*, 9 Ohio Dec. 89, 6 Ohio N.P. 47 (Ohio Super.1899), a case interpreting the 1871 Act, the court held that the "acceptance" referred to in the 1871 Act cannot be "anything other than a statutory acceptance by the municipal corporation which imposes upon it a liability to repair * * *." The court held that the 1871 Act's reference to subsequent acceptance by a municipality following the work of the platting commission rebutted the contention that the 1871 Act empowered the platting commission with the authority to dedicate streets as public. Thus, the 1871 Act does not implicitly accept streets as public simply because the platting commission included the streets on a plat map.

6

**{¶13}** Accordingly, we find that there was not a statutory dedication of the disputed streets by the city of Cincinnati.

### *Common Law Dedication*

**{¶14}** Delta Lookout argues in the alternative that there was a common law acceptance of the disputed streets. In order to show that the disputed streets were dedicated under the common law, Delta Lookout must prove: "(1) the existence of an intention on the part of the [owner] to make such a dedication; (2) an actual offer on the part of the [owner], evidenced by some unequivocal act, to make such dedication; and (3) the acceptance of such offer by or on behalf of the public." *OTR*, 1st Dist. Hamilton No. C-010658, 2003-Ohio-1549, at ¶ 35, citing *Dickason*, 53 Ohio App.2d at 141, 372 N.E.2d 608.

**{¶15}** Delta Lookout argues that the first two elements of common law dedication are undeniable: (1) that the former owner, John Kilgour, submitted a plat map of the disputed streets to the recorder's office with (2) the intent to dedicate them to the public evidenced by a brief paragraph on the map. The city argues otherwise, pointing to stipulated exhibits G-1 and G-2, which are pages from the recorder's plat book. In exhibit G-1, Kilgour expressly dedicates to the public use the streets platted on the map, but this map *does not* include the disputed streets. In exhibit G-2, a page that *does* include the disputed streets, there is no express dedication of the platted streets but merely an engineer's certification that the streets as laid down on the map correspond with those laid down on the recorded plats of the platting commission. Therefore, the existence of the owner's intention to dedicate the disputed streets and an actual offer to make such a dedication is absent from the record before us.

{¶16} Without an express dedication, the disputed streets still could have been dedicated through "silent acquiescence of the owner, for a period of time sufficient to warrant an inference of an intention to make such dedication and to constitute such acceptance." *McNamara v. Wilson*, 12th Dist. Butler No. CA2013-12-239, 2014-Ohio-4520, ¶ 30, citing *Neeley v. Green*, 73 Ohio App.3d 167, 170, 596 N.E.2d 1052 (12th Dist.1991). In such a case, we must analyze the third element of common law dedication: acceptance by the public. *Id.*

{¶17} Public acceptance can be express or implied from its actions. *OTR* at ¶ 35, citing *State ex rel. Mentor Lagoons, Inc. v. Wyant*, 166 Ohio St. 169, 140 N.E.2d 788 (1957); *Hicksville v. Lantz*, 153 Ohio St. 421, 426-427, 92 N.E.2d 270 (1950). To imply acceptance by the public of a street or road dedication, public use alone is insufficient. *Id.*, citing *State ex rel. Fitzhum v. Turinsky*, 172 Ohio St. 148, 153, 174 N.E.2d 240 (1961). Rather, implicit acceptance requires a demonstration that the city had taken control or direction over the disputed streets. *See OTR* at ¶ 35; *Fitzhum* at 153.

{¶18} Delta Lookout argues that the city accepted the streets in three ways: (1) by enacting ordinances to change the name of one of the disputed streets from "Hillside" to "Thetis" and then to "Willbarre"; (2) by vacating an unnamed street abutting the south side of Glengyle Avenue between Delta Avenue and Willbarre Street; and (3) by making actual improvements to the disputed streets. The city argues that none of these examples demonstrates public acceptance of the disputed streets.

{¶19} Regarding the first example, Delta Lookout argues that the city passed an ordinance in 1888 changing the name of a street from "Hillside" to "Thetis," and passed another ordinance in 1917 changing the name "Thetis" to "Willbarr [sic]

Terrace." The city stipulated to the record of the name-changing ordinances, but counters that an ordinance changing the name of a street does not demonstrate acceptance, citing *Oberhelman v. Allen*, 7 Ohio App. 251, 29 Ohio C.D. 596 (1st Dist.1915). In *Oberhelman*, this court rejected the argument that a street directory prepared and used by a police department, or a street sign placed by an unknown entity, indicated evidence of acceptance of the street as public. *Id.* In this case, the city's passage of an ordinance to change the street name is evidence of "official" action pertaining to the street, but is hardly indicative of the municipality taking on the burden of maintaining Willbarre Street as a public street. *See Fitzthum* at 153 (discussing the significant financial burden involved in assuming maintenance and improvement of a once-private street).

{¶20} Concerning the second example, Delta Lookout argues that the city passed an ordinance vacating an unnamed street, or what was effectively an alley, abutting the south side of Glengyle Avenue between Delta Avenue and Willbarre Street. The city counters that the ordinance in question expressly asserts that the unnamed street "has never been dedicated and consequently never accepted" as a public street. According to the ordinance, the vacation of the unnamed alley did not even involve or affect the disputed streets. Thus, the cases cited by Delta Lookout—pertaining to vacating streets as a means of acceptance by a municipality—are unpersuasive. Nothing in the case law suggests that the vacation of one street influences a municipality's ownership of another—nearby, abutting, or otherwise.

{¶21} For the third example, Delta Lookout argues that the city made actual improvements to the disputed streets in the form of waste collection, the designation of a fire lane, and the issuance of parking tickets to drivers who parked in violation of the fire lane. While "acceptance can be manifested by improvements to or

maintenance of a street or road," *Mastera v. City of Alliance*, 43 Ohio App.3d 120, 122, 539 N.E.2d 1130 (5th Dist.1987), the acts cited by Delta Lookout are not improvements to the streets themselves. Rather, the cited examples are ancillary municipal acts, and are not sufficient to convert the disputed streets into publicly dedicated streets. *See, e.g., Neeley*, 73 Ohio App.3d at 171, 59 N.E.2d 1052 (discussing insufficient evidence of public acceptance for common law dedication). Moreover, as the city notes, the Cincinnati Municipal Code contains provisions on fire lanes on undedicated streets and private property to permit safe passage for fire and police vehicles responding to emergency calls, and has a comparable provision on waste collection for private property. *See* Cincinnati Municipal Code 508-30, 1219-57, and 729-1-W.

{¶22} Accordingly, we find that there was not a common law dedication of the disputed streets by the city of Cincinnati.

{¶23} As a result of the above findings, we hold that the disputed streets are not public streets, and therefore, Delta Lookout does not have a clear legal right to the relief prayed for. Without a clear legal right to the relief requested, Delta Lookout is not entitled to the writ of mandamus.

### III. Conclusion

{¶24} For the aforementioned reasons, we hereby deny the petition for a writ of mandamus.

Writ denied.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.